**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

Kathryn A. Grace, Esq.
Nicole T. Melvani, Esq. (SBN 281718)
8444 Westpark Drive, Suite 510
McLean, Virginia 22102-5102
Telephone: (703) 245-9300
Facsimile: (703) 245-9301
Email: Kathryn.Grace@wilsonelser.com
Email: Nicole.Melvani@wilsonelser.com

Gregory K. Lee, Esq. (SBN 220354)
555 S. Flower Street, Suite 2900
Los Angeles, California 90071
Telephone: (213) 443-5100
Facsimile: (213) 443-5101
Email: Gregory.Lee@wilsonelser.com

*Attorneys for Defendant Delta Air Lines, Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### Los Angeles Division

| | |
|---|---|
| Z.B., a minor, and J.B., a minor, by their guardian, S.S., and S.S., an individual,<br><br>Plaintiffs,<br><br>v.<br><br>DELTA AIR LINES, INC.; BRIAN PARTRICK DURNING; and DOES 1-5, inclusive,<br><br>Defendants. | Case No. 2:24-cv-06190 FLA (DFM)<br>Hon. Fernando L. Aenlle-Rocha<br>Courtroom 6B<br><br>**DELTA AIR LINES, INC.'S, RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT**<br><br>Complaint Filed: January 30, 2024<br><br>Hearing Date: September 6, 2024<br>Time: 1:00pm<br>Courtroom: 6B<br><br>Trial Date: Not yet set |

Defendant Delta Air Lines, Inc. ("Defendant" or "Delta"), by and through its attorneys, Wilson, Elser, Moskowitz, Edelman, & Dicker LLP, hereby opposes Plaintiffs Z.B., J.B., and S.S.' ("Plaintiffs") Motion to Remand Action to State Court ("Motion to Remand") (Dkt. No. 14) as follows:

# TABLE OF CONTENTS

I.      INTRODUCTION ……………………………………………5

II.     PROCEDURAL HISTORY………………………………...6

III.    STATEMENT OF RELEVANT FACTS…………………8

IV.     LEGAL STANDARD……………………………………..11

V.      ARGUMENT………………………………………...11

A. The preponderance of evidence establishes that Defendant Durning is a Florida citizen and, therefore, complete diversity exists between the parties…………………………12

B. Delta appropriately filed a second notice of removal based upon Plaintiffs' discovery responses, which constitute "other papers" within the meaning of 28 U.S.C. § 1446(b) and which conclusively establish the amount in controversy exceeds the threshold………………………………………………18

C. Delta complied with the unanimity requirement…………20

VI.     CONCLUSION……………………………………………21

DELTA AIR LINES, INC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT

300909102v.1

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Aguilar v. Roto-Rooter Servs. Co.*, No. CV23-4537PA (SKx), 2023
U.S. Dist. LEXIS 130196 (C.D. Cal. July 26, 2023)……………………….…. 18

*Benson v. SI Handling Sys., Inc.*, 188. F.3d 780,783 (7th Cir. 1999)….….…....19

*Buenrostro v. Buenrostro,* No. 2:15-cv-138-JAM-KJN, 2015 U.S. Dist.
LEXIS 52403, at *9 (E.D. Cal. Apr. 21, 2015)…………………………..……...17

*Carson Cogeneration Co. v. Scottsdale Ins.* Co., No CV 19-10797,
2020 U.S. Dist. LEXIS 28155, at *7-8 (C.D. Cal. Feb. 18, 2020)…………........18

*Caterpillar Inc. v. Lewis,* 519 U.S. 61 (1996).......................................................11

*Cleveland v. West Ridge Acad.*, No. 1:14-cv-01825, 2015 U.S. Dist. LEXIS
3897 (E.D. Cal. Jan. 13, 2015)……………………………………...…………… 18, 19

*Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1187
(8th Cir. 2015)………………………………………………………………..21

*Gaus v. Miles, Inc.,* 980 F.2d 564 (9th Cir. 1992) …………………………...……11

*Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 201 (6th Cir. 2004)…..….21

*Johnson v. Johnson*, 615 Fed. Appx. 430, 431 (9th Cir. 2015)…………..…..16

*Kanter v. Warner-Lambert Co*. 265 F.3d 853, 857 (9th Cir. 2001)…………….12

*Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986)………...……………12, 13

*Mayo v. Bd. of Educ.*, 713 F.3d 735, 742 (4th Cir. 2013)……………...……20, 21

*Proctor v. Vishay*, 584 F.3d 1208 (9th Cir. 2009)………………………………20

*Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d. 1185, 1188 (9th Cir. 2015)..……...18

*Sibilia v. Makita Corp.*, 782 F. Supp. 2d 1329, 1331 (M.D. Fla. 2010)..……..19, 20

*Sweet v. United Parcel Serv., Inc.*, No. 19-CV-02653, 2009 U.S. Dist. LEXIS 54909, at *3 (C.D. Cal. June 15, 2009)…………………………………18

*Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957)……………...……...12

**Statutes**                                                                                    **Page(s)**

28 U.S.C. § 1332……………………………………………..5, 7, 8, 11, 12,17, 21
28 U.S.C. § 1441……………………...…………………...……..8, 11, 17, 21
28 U.S.C. §1446……………………...……………………..8, 17, 18, 19, 20, 21

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Delta properly removed this action based on new information that definitively establishes the amount in controversy exceeds the required threshold. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because the plaintiffs and the defendants are citizens of separate states and the amount in controversy has been confirmed through written discovery to be in excess of $75,000. Plaintiffs are California citizens. Delta, a corporation, is a citizen of Delaware and Georgia. Defendant Brian Patrick Durning ("Defendant Durning" or "Durning") is a citizen of Florida. Defendant Durning consented to the removal, and the removal was timely filed within 30 days of service of Plaintiffs' discovery responses.

In the instant Motion to Remand, Plaintiffs do not contest that the amount in controversy exceeds the $75,000.00 threshold. Instead, Plaintiffs base their motion on the assertion that Defendant Durning is domiciled in California and the parties are therefore not diverse. Plaintiffs also argue, without merit, that their discovery responses do not provide a basis for a second removal and vaguely contest whether Defendant Durning actually consented to the removal.

Diversity jurisdiction exists because Defendant Durning is domiciled in Florida, as of the time Plaintiffs filed their complaint on January 30, 2024. Durning's physical presence in Florida, coupled with his expressed intention to return there and his substantive connections to the state, conclusively establish that he is a Florida citizen.

For purposes of diversity, domicile is determined as of the time the lawsuit is filed. Furthermore, domicile is not equivalent to residence. Rather a person's domicile is their "permanent home," the place they intend to remain permanently or to which they intend to return. Plaintiffs' argument regarding Durning's domicile is premised solely on the fact that Durning resided in California and had

connections with that state *at the time of his arrest*. However, this evidence is irrelevant and unpersuasive, as the arrest occurred more than one year before the Complaint was filed. Plaintiffs produce no evidence that Durning has *any* intent to return to California after his release from prison or to reside there permanently. In contrast, Durning has repeatedly expressed his intent to return to Florida. This stated intention is corroborated, and supported, by Durning's extensive existing connections to the State of Florida.

In sum, diversity jurisdiction exists in this matter and Delta's removal is proper. Defendant Durning, who is a citizen of the state of Florida, consented to the removal. Plaintiffs' discovery responses constitute "other papers" that provided grounds for removal. Delta complied with all substantive and procedural requirements for removal and has met its burden of proof in establishing both the amount in controversy and the citizenship of the parties. Accordingly, Plaintiffs' motion to remand must be denied.

## II.   PROCEDURAL HISTORY

Plaintiffs Z.B., a minor, and J.B., a minor, by their guardian, S.S., and S.S., an individual, filed a Complaint against Delta Air Lines, Inc., Brian Patrick Durning, and Does 1-5 on January 30, 2024, in the Superior Court of Los Angeles County, case number 24TRCV00333 (the "State Court Action").

Plaintiffs' Complaint arises out of an incident on board a Delta flight from Los Angeles, California to Orlando, Florida. According to the complaint, Defendant Durning assaulted, Z.B., a minor passenger sitting next to him, causing injury to Z.B., her sibling J.B., and her mother, S.S. Durning was arrested and subsequently convicted of assaulting a minor and two counts of simple assault by a federal jury in the United States District Court for the Middle District of Florida.

On March 18, 2024, Delta timely filed a Notice of Removal, hereinafter referred to as the "First Notice of Removal". *See* Z.B. a minor et al. v. Delta Air Lines, Inc. et al., Case No. 2:24-cv-02178 FLA ("Prior Action") at Dkt. No. 1,

Notice of Removal. In the First Notice of Removal, Delta alleged that complete diversity existed between the parties and the amount in controversy exceeded the jurisdictional requirement of $75,000.00 as required by 28 U.S.C. § 1332.

On March 26, 2024, the Court issued an Order to Show Cause Why Action Should Not Be Remanded for Lack of Subject Matter Jurisdiction. *See* Prior Action at Dkt. No. 23. The Court ordered the parties to show cause why the action should not be remanded for lack of subject matter jurisdiction because the amount in controversy did not appear on the face of the Complaint to exceed $75,000.

On March 27, 2024, Delta conferred with Plaintiffs' counsel to inquire as to the amount of controversy that Plaintiffs are seeking in this matter by requesting Plaintiffs stipulate that the amount in controversy (1) does not exceed $75,000.00 or (2) does exceed $75,000.00. Plaintiffs declined to enter such a stipulation or to disclose the amount they were truthfully seeking. *See* Dkt. No. 1-3, Email from Plaintiffs' Counsel.  Plaintiffs also declined to provide any substantive information to Delta regarding their claimed injuries or damages.

On April 15, 2024, the Court issued its Order Remanding Action for Lack Of Subject Matter Jurisdiction. *See* Prior Action at Dkt. No. 37. In the Order, the Court found that Delta had not met its burden of submitting sufficient evidence which proved the amount in controversy exceeded $75,000.00.

Following remand, Delta served initial discovery on Plaintiffs seeking information relating to their alleged damages. On June 24, 2024, Plaintiff Z.B. responded to Delta's First Set of Requests for Admissions and admitted they are each seeking far more than $75,000.00 in damages. *See* Dkt. No. 1-4, Plaintiffs' Responses to Requests for Admissions.

On June 24, 2024, Plaintiffs served responses to Delta's Request for Statement of Damages, providing additional information regarding their claimed damages. *See* Grace Decl. at ¶ 3, **Exhibit A**. Plaintiff Z.B. stated that she is seeking $41,800,000.00 in damages. *Id*. Plaintiff S.S. stated that she is seeking

$21,350,000.00 in damages. *Id.* Plaintiff J.B. stated that he is seeking $20,800,000.00 in damages. *Id.*

Based on this new information, Delta filed a second Notice of Removal to remove this matter to this Court pursuant to 28 U.S.C. § § 1332, 1441, and 1446 asserting that this Court had diversity jurisdiction based on 28 U.S.C. § 1332 hereto referred to as "Second Notice of Removal." *See* Dkt. No. 1.

### III.   STATEMENT OF RELVANT FACTS

Pursuant to the Complaint, Plaintiffs are permanently domiciled in Los Angeles, California. *See* Plaintiffs' Complaint, Dkt. No. 1-1 at ¶ ¶ 7-9. It is undisputed that Delta is a citizen of both Delaware and Georgia. *Id*. at ¶ 10.

Defendant Durning is domiciled in and a citizen of the State of Florida. The evidence demonstrating Defendant Durning's Florida citizenship is extensive. It is undisputed that Defendant Durning does not presently reside in California. He is currently incarcerated at FCI Fort Dix in New Jersey. *See* Dkt. No. 14-1 at ¶ 6; s*ee also* Grace Decl. at ¶ 17, **Exhibit N** at ¶ 11.  Durning has not been physically present in the State of California since prior to his criminal trial in June 2023. *See* Grace Decl. at ¶ 5, **Exhibit B** at p. 229:4-9, 230:2-4. Durning has no existing substantive ties to the State of California and does not intend to return to California following his release from prison. *See* Grace Decl. at ¶ 6, **Exhibit C; Exhibit N** at ¶ 11. Rather, Defendant Durning intends to return to his home in Florida after his release from federal custody. *Id.*

Defendant Durning grew up in Florida and attended college there. After college, he was a "rolling stone," trying out different careers and living in various states other than Florida, including New York and California. *See* Grace Decl. at ¶ 7, **Exhibit D** at 33:16-17 and 54:8-18; *id.* at ¶ 8, **Exhibit E** at p. 11; *see also* Dkt. No. 14-11, LinkedIn Profile, attached to Plaintiffs' Motion as Exhibit 10. The government's expert witness described Durning as follows:

> Over the course of his life, Mr. Durning has floundered professionally and personally and not achieved the landmarks that signal stability and maturity. His multiple career changes have not led to steady, gainful employment. He has shifted from relationship to relationship. He has lived with his parents on and off for many years and when married, was supported financially by his wife.

*See* Grace Decl. at ¶ 8, **Exhibit E** at p. 11.

Durning's family, including his mother and father, live in Florida. *See* Grace Decl. at ¶ 5, **Exhibit B** at p. 229:4-9; *id.* at ¶ 7, **Exhibit D** at p. 24:9-25:9 and 26:4-27:6; *id.* at ¶ 9, **Exhibit F**. At the time of the incident, Durning was married to Marian Fernandes Durning. *See* Grace Decl. at ¶ 10, **Exhibit G**; *see also* Dkt. No. 14-12, Family Law Financial Affidavit, attached to Plaintiffs' Motion as Exhibit 11. Durning's ex-wife lives in Florida. *See* Grace Decl. at ¶ 11, **Exhibit H** at p. 4; *id.* at ¶ 12,  **Exhibit I**. They remain close and she supported him by attending the trial and submitting a letter to the Court on his behalf. *Id.* Durning's close friend, David Hammett, who testified on his behalf at his sentencing hearing, lives in Florida. *See* Grace Decl. at ¶ 7, **Exhibit D** at p. 32:9-35:10.

Durning used a Florida address when booking the June 23, 2022, flight that gave rise to this incident. *See* Grace Decl. at ¶ 13, **Exhibit J**. Durning provided police with a Florida address at the time of the incident and this Florida address was listed in the police report. *See* Grace Decl. at ¶ 14, **Exhibit K**; *id.* at ¶ 9, **Exhibit F**.  Durning's phone number has a Florida area code. *See* Grace Decl. at ¶ 14, **Exhibit K**. Durning's divorce from Marian Fernandes Durning, which was filed in October 2022 (a few months after the incident), proceeded in Lee County, Florida. *See* Grace Decl. at ¶ 10, **Exhibit G**. In August 2022 (shortly after the incident), Durning executed a Family Law Financial Affidavit reflecting he was self-employed with no income, no assets, and no personal or real property, and had only $100 to his name. *See* Dkt. No. 14-12, Family Law Financial Affidavit, attached to Plaintiffs' Motion as Exhibit 11.

Defendant Durning does not have an active California real estate license as it was lost due to his arrest and subsequent conviction. *See* Grace Decl. at ¶ 6, **Exhibit C**; *see also* Dkt. No. 14-15, License Information from the State of California's Department of Real Estate, attached to Plaintiffs' Motion as Exhibit 1. Durning is not currently married and has no children. Durning does not own any property in California, maintain a residence in California, or currently have any employment in California. Defendant Durning does not own any assets or maintain any assets in California. *See* Dkt. No. 14-12, Family Law Financial Affidavit, attached to Plaintiffs' Motion as Exhibit 11.

Prior to and during his criminal trial, Defendant Durning stayed with his family in Florida. *See* Grace Decl. at ¶ 5, **Exhibit B** at p. 229:4-9. After his conviction on June 22, 2023, Durning's pretrial release was revoked and he was remanded into custody and incarcerated in Orange County, Florida where he resided until his sentencing hearing on September 26, 2023. *See* Grace Decl. at ¶ 5, **Exhibit B** at p. 230:2-4; *id.* at ¶ 7, **Exhibit D** at p. 43:6-7. Upon his conviction, Durning intended and still intends to live in the Middle District of Florida where his mother lives. *See* Grace Decl. at ¶ 17, **Exhibit N** at ¶ 11.

At his sentencing hearing, and several months before the filing of the Complaint, Defendant Durning's mother repeatedly asked that Durning be allowed to come "home" to help her and his father while his father recovered from a surgery scheduled for September 2023. *See* Grace Decl. at ¶ 7, **Exhibit D** at p. 24:9-25:9 and 26:4-27:6. Notably, Durning's attorney requested that he be incarcerated in the closest facility to Orlando, Florida. *Id.* at p. 82:25-83:6.

> "Your Honor, we'd request a recommendation for a facility closest to Orlando. I think if we ask for a specific facility and then they're not able to send him there, then they open it up to the entire country; but if the Court recommends a facility closest to Orlando, then if one isn't available, they'll send him to the next closest one."

*Id*. The Court granted this request, recommending that Durning be incarcerated in a facility closest to Orlando or, if unavailable, a facility in Florida. *Id*. at p. 83:7-12; *see also See* Grace Decl. at ¶ 15, **Exhibit L**.

Durning has repeatedly confirmed his intent to return to Florida upon his release from prison. *See* Grace Decl. at ¶ 6, **Exhibit C**; *id.* at ¶ 16, **Exhibit M;** *id.* at ¶ 17, **Exhibit N** at ¶ 11.

## IV.    LEGAL STANDARD

A civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action. 28 U.S.C. 1441(a). A district court has jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the dispute is between "citizens of different states." 28 U.S.C. § 1332. Such diversity jurisdiction requires complete diversity, i.e., that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68 (1996).

The defendant removing the case to federal court bears the burden of establishing jurisdictional facts, namely the complete diversity of the parties and the amount in controversy. *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 682-83 (9th Cir. 2006). Where a plaintiff contests a jurisdictional fact, the defendant must establish that fact by a preponderance of the evidence. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992) (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)).

## V.    ARGUMENT

This action was properly removed because the parties are completely diverse and the newly uncovered information from Plaintiffs' discovery responses clearly demonstrates that that the amount in controversy exceeds the federal threshold under 28 U.S.C. § 1332. A preponderance of evidence supports that Brian Durning

is domiciled in and a citizen of the state of Florida. Durning consented to the removal, which was timely filed after receipt of Plaintiffs' discovery responses.

**A.** <u>**The preponderance of evidence establishes that Defendant Durning is a Florida citizen and, therefore, complete diversity exists between the parties.**</u>

A person is domiciled where he or she "(1) has established a fixed habitation or abode in a particular place, and (2) intends to remain . . . permanently or indefinitely." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) (quotations omitted). "[A] person's old domicile is not lost until a new one is acquired," and "[a] change in domicile requires the confluence of (a) physical presence in the new location with (b) an intention to remain there indefinitely." *Id*. at 750. The existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed. *Id*. Thus, a person is a citizen of the state in which he is domiciled at the time the lawsuit is filed. *Id.* at 749-50.

Critically, "[a] person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Kanter v. Warner-Lambert Co*. 265 F.3d 853, 857 (9th Cir. 2001). This is because "28 U.S.C. §1332 speaks of citizenship, not of residency. . . . The natural person's state citizenship is then determined by her state of domicile, not her state of residence." *Id.; see also Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223 (9th Cir. 2019) ("We agree that residency is not equivalent to citizenship."); *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain place one's permanent abode, though, to be sure domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile."). Rather, a person's domicile is his or her "permanent home, where she resides with the intent to remain or to which she intends to return." *Kanter,* 265 F.3d at 857.

Courts consider a number of factors in determining an individual's citizenship including: "current residence, voting registration and voting practice, location of personal and real property, location of brokerage or bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew*, 797 F.2d at 750. However, no single factor is controlling. *Id*.

It is true that "[i]n cases involving prisoners, the courts presume that the prisoner remains a citizen of the state where he was domiciled before his incarceration, even if he is subsequently incarcerated in a different state." *Hall v. Curran*, 599 F.3d 70, 72 (1st Cir. 2010). "Because domicile is a voluntary status a prisoner is presumed to be a citizen of the state in which he was a citizen before his incarceration, even if he is subsequently incarcerated in another state." *Smith v. Cummings*, 445 F.3d 1254 (10th Cir. 2006); *Sullivan v. Freeman*, 944 F.2d 334 (7th Cir. 1991). However, that presumption is rebuttable. *Stifel v. Hopkins*, 477 F.2d 1116 (6th Cir. 1973). "A litigant will not be precluded from establishing a domicile within a state for purposes of diversity jurisdiction solely because his presence there initially resulted from circumstances beyond his control." *Id*. When determining the citizenship of a prisoner, relevant factors for the district court to consider include "the prisoner's declaration of intentions, the possibility of parole, the manner in which [he] has ordered his personal and business affairs, and any other factors…" *Smith*, 445 F.3d at 1260.

Here, the determination of domicile for diversity purposes is not based on where Durning was domiciled at the time of the incident or at the time of his arrest, but, rather, where he was domiciled at the time the Complaint was filed in January 2024. The evidence demonstrates that, at least as of the time of the filing of the Complaint to present, Durning's domicile is the state of Florida. This is supported by several key factors demonstrating Durning's substantive and extensive

connections to the state of Florida including: his physical presence in Florida prior to and after incarceration; his living in Florida with his family leading up to and during his criminal trial; his request to remain in Florida and be sentenced to a prison in Florida; the location of his family and friends in Florida; his lack of assets and employment; his history as a "rolling stone" who bounced around the country; his post-arrest divorce proceedings in Florida; his use of a Florida address for travel purposes and during his interaction with law enforcement; his maintenance of a Florida telephone number; the absence of any personal or real property in California; the absence of any current residence in California; the absence of any employment or business in California; the absence of any intent to return to California; and, most importantly, Durning's intent to reside in Florida after his release from prison.

Durning was a "rolling stone" and he lived off and on with his parents and ex-wife in Florida throughout his life. *Id.* Defendant Durning's mother has lived in the same home in Longwood, Florida since he was five (5) years old and testified she has no plans to relocate. *See* Grace Decl. at ¶ 7, **Exhibit D** at p. 27:1-6. Durning's mother asked the court to send him "*home" (i.e. to their residence in Florida) eleven (11) times* at his sentencing hearing. *Id.* at p. 24:9-27:6. Tellingly, neither of the friends who testified at Durning's sentencing hearing were individuals he met while in California, instead, both relationships were rooted in his ties to Florida. *Id.* at p. 27:15-18 and 35:10-12.

Durning has been in federal custody since June 22, 2023 and has not been physically present in California since before that time. Plaintiff's Motion to Remand concedes that the Ninth Circuit has not established a presumption that prisoners are domiciled in the state where they resided in before their incarceration. *See* Dkt. No. 14, Plaintiffs' Motion at p. 11. Therefore, the issue of domicile should be determined by his physical presence in Florida coupled with a stated intent to remain there indefinitely.

Upon his conviction in Florida in June 2023, Durning intended and still intends to live in the Middle District of Florida where his mother lives. *See* Grace Decl. at ¶ 17, **Exhibit N** at ¶ 11. Defendant Durning, through his criminal attorney, expressed his desire and intention to remain in Florida at his sentencing hearing in September 2023. Durning was staying at his family home in Florida prior to and during his trial and was jailed in Orange County, Florida, for the three-month period between his criminal conviction in June 2023 and sentencing hearing in September 2023. At his sentencing, Durning requested to be incarcerated in the facility closest to Orlando, demonstrating his desire to remain in Florida. Notably, he did not request to be incarcerated at a facility in California. Defendant During formed and expressed an intent to remain in Florida, near his family, permanently while physically present and residing in the state. Since June 2023, Durning has consistently maintained his intent to return to Florida upon his release and confirmed his existing lack of connections to California. *See* Grace Decl. at ¶ 6, **Exhibit C**; *id.* at ¶ 16, **Exhibit M;** *id.* at **Exhibit N** at ¶ 11.

Durning's stated intentions are not amorphous or fleeting, but are based on his extensive existing ties to the State of Florida and the location of his support system. There is no indication Durning has been physically present in California at any time since his trial in June 2023 and there is no indication that Durning has any intent to return to California. Durning has continued to express an intent to live in Florida as recently as the time of removal. Therefore, the preponderance of evidence clearly establishes that Defendant Durning was domiciled in Florida when the action was initiated on January 30, 2024 and at the time of removal.

In contrast, Plaintiffs can only point to Durning's stale connections to California from before his trial and conviction. Even if California would have been considered Durning's domicile at the time of the subject incident (and Delta does not so concede given Durning's history as a wanderer and the evidence outlined above), Plaintiffs reference no Ninth Circuit case law or statute articulating that

involuntary incarceration prevents an individual from changing his domicile and acquiring a new one. More importantly, Plaintiffs cannot point to any evidence demonstrating that Durning intends to return to California after his release from prison. It is undisputed that Durning was physically present in Florida with an intention to remain there at the time of his incarceration and well before the initiation of this action. Thus, even if Durning had acquired the domicile of California when he resided there prior to his arrest, he re-acquired the domicile of Florida prior to the initiation of this action. California simply cannot by any measure of the evidence be said to be Durning's "permanent home", the place he intends to return to, or the place he intends to remain "permanently."

Plaintiffs' reliance on case law wherein courts concluded that a prisoner's domicile did not automatically change when they were involuntarily moved to a different state is misplaced. Delta does not argue that Durning is a citizen of New Jersey, the location where he happens to be currently incarcerated. Rather, Delta asserts that Durning is a citizen of Florida, the state where he grew up, where his family lives, and where he intends to reside after incarceration. The cases cited by Plaintiffs therefore actually support a determination that Durning is domiciled in Florida.

For example, in *Johnson v. Johnson,* the Ninth Circuit concluded that a prisoner was domiciled in Oregon because he had been a resident of Oregon at the time of his incarceration, and he *had not expressed* an intent or taken any actions to demonstrate an intent to establish a domicile anywhere outside of Oregon. *Johnson v. Johnson*, 615 Fed. Appx. 430, 431 (9th Cir. 2015). Here, Durning was physically present in Florida, expressed the intent to return there after his incarceration, and took multiple actions demonstrating an intent to return to Florida – factors the *Johnson* court found compelling.

Plaintiffs face a similar problem in *Buenrostro v. Buenrostro*, in which the court determined that an individual incarcerated in Louisiana remained a citizen of

California. *Buenrostro v. Buenrostro,* No. 2:15-cv-138-JAM-KJN, 2015 U.S. Dist. LEXIS 52403, at *9 (E.D. Cal Apr. 12, 2015), report and recommendation adopted, No. 2:15-cv-138-JAM-KJN, 2015 U.S. Dist. LEXIS 182778 (E.D. Cal. June 8, 2015).   The Court found the plaintiff had failed to provide the court with "any objective facts or other evidence" indicating he had changed his domicile from California, where he resided prior to incarceration, to Louisiana, where he was incarcerated. *Id*. Importantly, in that case the court noted "Plaintiff points to no specific family or property ties to Louisiana. He does not even allege that he intends to make Louisiana his permanent home should he ever be released from custody." *Id*.  It was undisputed in *Buenrostro* that the plaintiff's family (including his brothers, former wife and children) still resided in California, the real property at issue was in California, and the prisoner had requested to be transferred to a prison in California to be located near his family. *Id*. at *10-12. The Court found that the plaintiff's actions indicated an intent to return to California after incarceration.  *Id*. at *12. These facts are entirely distinct from the matter at hand, where Durning requested to be incarcerated in Florida, has stated an intention to return to Florida after his release, and his mother and father reside in Florida. Again, this reasoning supports a finding that Durning is a citizen of Florida.

The preponderance of the evidence establishes that Durning was a citizen of Florida at the time the Complaint was filed, as he intends to return there after his incarceration to be with his family. Plaintiffs attempt to fit a square peg into a round hole by citing cases related to prisoners lacking any independent connection to the location of their incarceration or attempting to assert domicile in a location where they have no existing connections.

Diversity jurisdiction exists and this matter was properly removed to federal court pursuant to 28 U.S.C. §1332, 28 U.S.C. § 1441, and 28 U.S.C. §1446. Accordingly, the Court should deny Plaintiffs' Motion to Remand, as the parties are completely diverse.

**C.** **Delta appropriately filed a second notice of removal based upon Plaintiffs' discovery responses, which constitute "other papers" within the meaning of 28 U.S.C. § 1446(b) and which conclusively establish the amount in controversy exceeds the threshold.**

Delta's second removal was proper because Plaintiffs' responses to Delta's written discovery provided previously unavailable information that constituted new and different grounds for removal.

The Ninth Circuit has held that a successive removal petition is permitted "upon a relevant change in circumstances . . . when subsequent pleadings or events reveal a *new and different* ground for removal." *Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d. 1185, 1188 (9th Cir. 2015). "Where a court has previously remanded a removed action for a defendant's failure to meet its burden, successive notices of removal . . . generally must be based on information not available at the prior removal." *Sweet v. United Parcel Serv., Inc.*, No. 19-CV-02653, 2009 U.S. Dist. LEXIS 54909, at *3 (C.D. Cal. June 15, 2009).

Parties are permitted to file a second removal when newly discovered information obtained through written discovery offers new and different grounds for removal. *See Aguilar v. Roto-Rooter Servs. Co.*, No. CV23-4537PA (SKx), 2023 U.S. Dist. LEXIS 130196, at *7 (C.D. Cal. July 26, 2023) ("Sworn discovery responses received from another party in the pending litigation constitute 'other paper' within the meaning of 28 U.S.C. § 1446(b) from which a party may properly be put on notice that a case is or has become removable"; denying motion to remand a second removal that was based on discovery responses); *Carson Cogeneration Co. v. Scottsdale Ins. Co.*, No CV 19-10797, 2020 U.S. Dist. LEXIS 28155, at *7-8 (C.D. Cal. Feb. 18, 2020). (permitting successive removal based on information newly discovered through discovery); *Cleveland v. West Ridge Acad.*, No. 1:14-cv-01825, 2015 U.S. Dist. LEXIS 3897, at *13 (E.D. Cal. Jan. 13, 2015) ("[A] plaintiff's statement of damages furnished after service of the complaint can

constitute 'other paper' within the meaning of section 1446(b) and trigger the thirty-day period for removal."); *see also Benson v. SI Handling Sys., Inc.*, 188. F.3d 780, 783 (7th Cir. 1999) ("The only effect of adopting an absolute one-bite rule would be to encourage plaintiffs to be coy").

At the time of the initial removal, the only information available to Delta regarding Plaintiffs' alleged damages was the allegations in the complaint. Plaintiffs' discovery responses and Statements of Damages provided information that was not previously available to Delta and conclusively established the amount in controversy exceeded the minimum threshold. Delta's second removal, based on this new and different information, is therefore proper and appropriate.

In *Cleveland v. West Ridge Acad.*, No. 1:14-cv-01825, 2015 U.S. Dist. LEXIS 3897, at *13 (E.D. Cal. Jan. 13, 2015), when the defendant first attempted to remove the case on diversity grounds, the matter was remanded for lack of subject matter jurisdiction because the complaint failed to plead a specific amount of damages establishing the amount in controversy met the statutory minimum and a demand letter sent prior to the service of the complaint was not sufficient evidence to establish removability. *Id*. at *4-5. After remand, the plaintiffs served Statements of Damages on Defendants, seeking damages totaling $400,000, and the defendant filed a second notice of removal. The district court denied plaintiffs' motion to remand, concluding the Statements of Damages constituted an "other paper" within the meaning of section 1446(b), and established that the amount in controversy exceeded the jurisdictional minimum. *Id*. at *13. This is precisely what happened in this case and the reasoning in *Cleveland* should be applied here.

Similarly, in *Sibilia v. Mikita Corp*, 782 F. Supp. 2d 1329, 1331 (M.D. Fla. 2010), the district court permitted a second removal under very similar circumstances as those presented here. In *Sibilia*, the court remanded the case after determining the defendant had failed to meet its burden in establishing the amount in controversy. *Id*. Subsequently, the defendant served the plaintiff requests for

admission and plaintiff was forced to admit the amount in controversy exceeded the jurisdictional threshold. *Id.* Ultimately, the district court accepted the written discovery responses as an adequate basis for a second removal. *Id.* These facts are nearly identical to those presently before the Court and the same outcome is warranted.

It in undisputed that Plaintiffs did not provide any information regarding their claimed damages or stipulate regarding the amount in controversy at the time of the First Removal. *See* Prior Action, Dkt. No. 34 at ¶ 12. The Ninth Circuit does not have a "one-bite" rule. Plaintiffs' discovery responses, including their responses to requests for admissions and statements of damages constitute "other papers" within the meaning of section 1446(b), and provided Delta grounds to remove, based on the amount of controversy and the diversity of citizenship between the parties.

## C. <u>Delta complied with the unanimity requirement.</u>

Defendant Durning consented to removal. *See* Grace Decl. at ¶ 6, **Exhibit C;** *id.* at **Exhibit N** at ¶ 11.  Plaintiffs' vague contentions challenging Durning's consent are without merit. The Ninth Circuit does not require consent to be given in a writing or require that an affidavit stating consent be attached to a Notice of Removal. Rather, counsel's averment as to consent in the pleading is sufficient for removal purposes. *See Proctor v. Vishay*, 584 F.3d 1208 (9th Cir. 2009) ("[W]e conclude that the filing of a notice of removal can be effective without individual consent documents on behalf of each defendant. One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient."). This majority rule is also followed by the Fourth, Sixth, and Eighth Circuits. *See Mayo v. Bd. of Educ.*, 713 F.3d 735, 742 (4th Cir. 2013) ("[A] notice of removal signed and filed by an attorney for one defendant representing unambiguously that the other defendants consent to the removal satisfies the requirement of unanimous consent for purposes of removal."); *Harper*

*v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 201 (6th Cir. 2004) (same); *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1187 (8th Cir. 2015) (same). Thus, Delta satisfied the unanimous consent rule in its Notice of Removal.

As required by 28 U.S.C. 1446(c), Delta's counsel met and conferred with Defendant Durning and obtained Durning's consent to the removal. In addition to the averment in the Notice of Removal, which is sufficient for removal purposes, Durning's consent is evidenced in **Exhibit C**. Accordingly, Delta complied with the statutory requirement for unanimity. Durning consented to the removal.

This matter was properly removed and Delta's notice of removal complied with all statutory requirements. Plaintiffs' Motion to Remand must be denied.

## VI.   CONCLUSION

Delta has fully satisfied its burden of showing complete diversity among the parties to this case, and there is no longer any challenge or dispute as to the amount in controversy. This case was properly removed in compliance with the procedural and substantive requirements of 28 U.S.C. §§1332, 1441, and 1446. For these reasons, and as set forth above, Delta respectfully asks this Court to deny Plaintiffs' Motion to Remand, retain jurisdiction over this case, and award Delta such other relief as the Court deems proper.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11.6-1

The undersigned, counsel of record for Delta Air Lines, Inc., hereby certifies that this brief contains 5,668 words, which complies with the word limit of L.R. 11-6.1.

///

///

DELTA AIR LINES, INC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT

300909102v.1

Respectfully submitted

Dated: August 16, 2024

**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**

By: */s/ Kathryn A. Grace*
    Kathryn A. Grace, Esq.
    Nicole T. Melvani, Esq.
    Gregory K. Lee, Esq.
    *Attorneys for Defendant*
    *Delta Air Lines, Inc.*

DELTA AIR LINES, INC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT

300909102v.1

*Z.B. et al v. Delta Air Lines, Inc. et al*

# PROOF OF SERVICE

I, the undersigned, am over the age of 18 and not a party to the within action. My business address is 8444 Westpark Drive, Suite 510, McLean, Virginia 22102.

On August 16, 2024, I caused to be served the following document(s) described as follows:

**DELTA AIR LINES, INC'S. RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT; DECLARATION OF KATHRYN A. GRACE AND EXHIBITS THERETO; PROPOSED ORDER**

on the parties in this action by placing a true copy in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

☐ **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☒ **BY MAIL** - As follows: to Defendant Brian Patrick Durning. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Diego, California.

☒ **BY E-MAIL OR ELECTRONIC TRANSMISSION** - I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Executed on August 16, 2024, at McLean, Virginia. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

/s/ Kathryn A. Grace

_____
Kathryn A. Grace

*Z.B. et al v. Delta Air Lines, Inc. et al*

**SERVICE LIST**

| | |
|---|---|
| **LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**<br>Jessica R. Lobis Buckwalter (SBN 199200)<br>Jessica.Buckwalter@lbkmlaw.com<br>Jeffrey Robinson<br>Jeffrey.Robinson@lbkmlaw.com<br>1050 K Street, NW, Suite 400<br>Washington, DC 20001<br>Tel: (202) 833-8900<br>Fax: (202) 466-5738<br><br>Adam Kaufmann<br>Adam.Kaufmann@lbkmlaw.com<br>Li Jiang (SBN 292940)<br>Li.Jiang@lbkmlaw.com<br>10 Grand Center, 155 East 44th St., 25th Floor<br>New York, NY 10017<br>Tel: (212) 826-596-2919<br>Fax: (202) 826-7146<br><br>**AGNIFILO LAW GROUP, APC**<br>Karen Agnifilo<br>karen@agnifilolaw.com<br>256 5th Ave.<br>New York, NY 10001<br>Tel: (646) 596-2919<br><br>**DE CASTRO LAW GROUP, P.C.**<br>José-Manuel A. de Castro (SBN 213769)<br>jmdecastro@decastrolawgroup.com<br>7590 N. Glenoaks Blvd., Suite 201<br>Los Angeles, CA 91504<br>Tel: (310) 270-9877<br>Fax: (310) 341-2330 | Attorneys for Plaintiffs |

DELTA AIR LINES, INC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT

300909102v.1

| Brian Patrick Durning<br>Inmate Reg. No. 07785-510<br>FCI Fort Dix<br>Federal Correctional Institution<br>P.O. Box 2000<br>Joint Base MDL, NJ 08640 | *Pro Se* Defendant |
|---|---|

DELTA AIR LINES, INC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT

300909102v.1