# EXHIBIT E

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                        CASE NO. 6:22-cr-102-WWB-RMN

BRIAN PATRICK DURNING

**UNITED STATES' MOTION FOR UPWARD DEPARTURE
AND/OR UPWARD VARIANCE AND SENTENCING MEMORANDUM**

The United States of America moves for an upward departure and/or variance from the advisory guidelines range in this case, and requests that this Court sentence the defendant, Brian Patrick Durning, to the statutory maximum term of imprisonment allowable—five years. In support of such request, the United States files this Sentencing Memorandum and states as follows:

**I.**     **Factual Background**

On June 24, 2022, the defendant in this case, Brian Patrick Durning, had sexual contact with a 13-year-old girl (Z.B.) while onboard a Delta Air Lines flight. Z.B. testified that the defendant began acting "weird" when the lights were dimmed on the flight (T-ZB: pg. 13, line 19-20).[1] The defendant began by "rubbing his leg up against [ZB], and he kept touching [her] hair." (T-ZB: pg. 13, line 22-23). The defendant continued by touching ZB's hair and neck with his hands (T-ZB: pg. 14, line 13-14). When the child tried to stop the defendant from

---

[1] References to the sealed transcript of Z.B. will be referred to as T-ZB.

1

touching her, the defendant's hand then ran down the child's chest and touched her breast (T-ZB: pg. 15, line 6-13; pg. 38, line 3-8). Throughout this unwanted contact, the defendant continuously looked around to ensure the other passengers were asleep (T-ZB: pg. 16, line 8-10; pg. 43, line 20-21). When a passenger would wake up, the defendant was stop groping the child (T-ZB: pg. 16, line 14-17). The defendant called the child "honey boo," told her that he would take her to Texas, and told her: "you are never going to see your family again" (T-ZB: pg. 16, line 24-25).

The contact escalated and the defendant began grabbing the child's inner thigh, forcefully opening her legs, and ultimately placing his finger inside of her vagina through the sweatpants she was wearing (T-ZB: pg. 17, line 19-25; pg. 18, line 1-5; pg. 47, line 7-14). While he was going this, the defendant was "rubbing himself by his zipper," which was undone (T-ZB: pg. 19, line 7-10; pg. 41, line 8-13).

As a result of this assault, the victim immediately suffered a "panic attack" and experienced crying, shaking, and couldn't speak (T-ZB: pg. 50, line 2-9). The child suffered physical pain and noticed blood in her underwear (T-ZB: pg/ 18, line 10-12; pg. 25, line 3-11; pg. 51-52; line 24-1; pg. 65, line 18-20). The victim couldn't sleep and experienced nightmares immediately after the assault (T-ZB: pg. 25, line 19-25). These continued after she returned home and continued through the time of her trial testimony one year later (T-ZB: pg. 27, line 1-12). The victim has experienced difficulty in school (T-ZB: pg. 28, line 2-20). A year

2

after the assault, the victim continues to experience significant mental and emotional trauma and sees a therapist to address these injuries (T-ZB: pg. 29, line 1-11).

The victim's mother, ▇▇▇▇▇▇, testified about the short-term and long-term injuries suffered by her daughter as a result of the assault. She testified that ZB "did not want to hang out with her friends...didn't want to leave the house…didn't want to go anywhere…wouldn't go to the beach…wouldn't wear a bathing suit…didn't want to go back to school" (Doc. 131, pg. 54, line 17-20). In the months following the assault, the victim's mother also noticed that her daughter developed a series of "ticks," which included "blink[ing] her eyes really hard…clearing her throat all the time…[and] stick[ing] her neck out and tens[ing] up (Doc. 131, pg. 58, line 16-20). She also testified about the challenges in getting ZB to attend school after the assault and the significant drop in grades (Doc. 131, pg. 59, line 17 – pg. 60, line 16).

▇▇▇▇▇▇ testified about a number of trauma-related episodes in the months since the assault, including the most recent prior to the trial when she discovered that her daughter had been cutting herself (Doc. 131, pg. 67, line 6-24).

The woman seated next to the victim, ▇▇▇▇▇▇, testified about the conversation she had with ▇▇▇▇▇▇ prior to the victim taking the seat next to ▇▇▇▇. According to ▇▇▇▇, ▇▇▇▇▇▇ stated that ZB was "very quiet" (Doc. 129, pg. 63, line 16). ▇▇▇▇▇▇ similarly testified that she told ▇▇▇▇, "It's tricky

3

because if she doesn't know someone, she won't talk to them" (Doc. 131, pg. 20, line 18-19). The defendant was seated next to ▮▮▮▮ and ▮▮▮▮ during this conversation and he was not on his phone and therefore able to hear about the child's limitations (Doc. 131, pg. 21, line 1-6).

▮▮▮▮ testified about waking up and observing the defendant pull his hand from inside the victim's thigh (Doc. 129, pg. 71, line 15-18; pg. 99, line 24-25). ▮▮▮▮ then switched seats with the victim and summoned for the flight attendants (Doc. 129, pg. 74, line 12-18). The defendant then attempted to grope the breasts of ▮▮▮▮, but she physically stopped him (Doc. 129, pg. 76, line 1-13).

## II. Procedural History

Durning was arrested when the flight landed in Orlando on June 24, 2022. He was charged by Complaint and released on bond conditions. An indictment was returned on July 6, 2022, charging the defendant with Abusive Sexual Contact with a Minor. On September 21, 2022, a Superseding Indictment was returned adding charges for Assault of a Minor Causing Substantial Bodily Injury and Assault Causing Serious Bodily Injury.

The defendant proceeded to trial on June 20, 2023, and a jury returned a unanimous verdict on June 22, 2023. The jury found the defendant guilty of Assault of a Minor Causing Substantial Bodily Injury and found him guilty of the lesser-included offense of simple assault on the remaining two counts. The defendant was remanded into custody following the verdict.

4

### III. Guidelines Calculation and Request for Upward Departure

#### A. Statutory Sentence

The penalties for the offense charged in Count Two of the Superseding Indictment are not more than 5 years' imprisonment; not more than 3 years' of supervised release; not more than a $250,000 fine; and a mandatory $100 special monetary assessment.

#### B. The USSG Advisory Recommendation

Apart from statutory maximums, the Court must also be advised by the Sentencing Guideline's recommended sentencing range. 18 U.S.C. § 3553(a)(4). The Probation Officer scored Defendant at offense level 11 and criminal history category I. At that level and category, the advisory guideline range is 8-14 months of imprisonment, 1-3 years' supervised release, and a $4,000 - $40,000 fine.

#### C. Upward Departure

18 U.S.C. § 3661 provides that "[N]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of establishing an appropriate sentence."

18 U.S.C. § 3553(a) requires that the Court impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]. In determining the sentence, the Court must consider, among other things, the nature and circumstances of the offenses, and the

5

history and characteristics of the defendant.

The Court must also consider any pertinent policy statements issued by the Sentencing Commission. 18 U.S.C. § 3553(a)(5); USSG § 1B1.1(b). "The sentencing statute permits a court to depart from a guideline-specified sentence only when it finds 'an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described'." USSG § 1A4(b), citing 18 U.S.C. § 3553(b).

Here, there are grounds for an upward departure based on the fact that Z.B. was a vulnerable victim. The sentencing guidelines provide that a defendant's offense level should be increased by two levels if the defendant "knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). A vulnerable victim is "a victim of the offense of conviction ... who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." *Id*. § 3A1.1 cmt. n.2. "The vulnerability that triggers § 3A1.1 must be an 'unusual' vulnerability which is present in only some victims of that type of crime." *United States v. Davis*, 967 F.2d 516, 524 (11th Cir. 1992). The Eleventh Circuit "give[s] due deference to the district court's determination that a victim was vulnerable, as this is a factual finding." *United States v. Birge*, 830 F.3d 1229, 1231 (11th Cir. 2016) (quoting *United States v. Kapordelis*, 569 F.3d 1291, 1315–16 (11th Cir. 2009)).

6

In construing the "otherwise particularly susceptible" language in § 3A1.1, we have acknowledged that "circumstances and immutable characteristics" can render a victim of criminal activity unusually vulnerable. *United States v. Bradley*, 644 F.3d 1213,1288 (11th Cir. 2011); *United States v. Pierre*, 825 F.3d 1183, 1195-96 (11th Cir. 2016).

In this case, the victim suffers from a disability which made her particularly vulnerable. The victim has selective mutism and had only just turned 13-year-old when this crime occurred. The defendant knew or should have known about the condition of the victim because it was discussed in his presence prior to the assault. Additionally, the defendant used the opportunity presented of an overnight flight with dim lighting and many sleeping passengers to perpetrate this assault. These conditions, together with the victim's disability and the unfortunate separation from her mother, made the victim particularly vulnerable and the defendant exploited those circumstances to advance this crime. Therefore, a 2-level upward departure is warranted.

An additional basis to depart upward is U.S.S.G. § 5K2.3, Extreme Psychological Injury (Policy Statement). This section states:

> "If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.
>
> Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a

7

victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns. The court should consider the extent to which such harm was likely, given the nature of the defendant's conduct."

Here, the defendant's assault caused significant long-term injuries to the victim at a very delicate point in her development. The defendant has forever altered the natural adolescent development of this child. As explained during the trial and in the victim impact statements, Z.B. can't live a normal life because of what the defendant did to her. There is no certainty that she will ever recover from these injuries or how her life will be affected in the future. The effects documented since this assault are of such a degree that an upward departure of 10 levels is warranted under the guidelines.

## IV. Sentencing Factors under 18 U.S.C. § 3553(a) and Request for Upward Variance

In addition to (or as an alternative to) an upward departure, an upward variance would also be warranted and reasonable under the circumstances of this case. Pursuant to *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, sentencing judges should apply the United States Sentencing Guidelines (USSG) in arriving at an appropriate sentence. However, the USSG may not be applied in a mandatory manner. That is, sentencing judges should apply the USSG in fashioning an appropriate sentence, but may vary from the USSG, if to do so would result in a reasonable sentence, considering various other factors that Congress has enumerated in 18 U.S.C. § 3553(a). These

8

factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

The weight given each factor is committed to the sound discretion of the District Court. *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007). The District Court need not expressly discuss each factor, so long as the Court considers the defendant's arguments at sentencing and states that the Court has considered each of the 3553(a) factors. *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005); *United States v. Bilus*, 626 F. App'x 856, 875-76 (11th Cir. 2015).

    A.    <u>Nature and Circumstances of the Offense</u>

The Court must consider the nature and circumstances of the offense. 18 U.S.C. § 3553(a)(1). This was a crime perpetrated by a 51-year-old man who stand 6'2" and weighs over 200 pounds. His victim was a petite child, who just turned 13-years-old. She was separated from her mother and her special-needs brother. She suffers from selective mutism. There were passengers all around

9

her and this was a full flight. Of all the passengers on this flight who could have been sat next to her, it was the defendant, Brian Durning. He waited until passengers fell asleep and the lights were dimmed, and he slowly and methodically groped and humiliated a child who was incapable of stopping him or calling for help. Z.B. could see her mother from where she was assaulted but due to her disability, she couldn't even call out for her mom. And when he realized she was incapable of stopping his assault, he pulled open her legs and slid his finger into her vagina for his own sexual gratification. When he got caught, the defendant falsely claimed that he took Ambien and fell asleep. He persisted in this false defense for months, at great time and expense to the government. Only when his fabricated defense was exposed through experts, did he abandon the Ambien claim. Ambien played no role in this offense and the defendant knew that all along. But he persisted in this fraud in order to conceal his crime. The nature of this offense is abhorrent, disgusting, and calls for a serious sentence.

    B.    <u>Defendant's History and Characteristics</u>

Although the defendant has been convicted for alcohol-related driving offenses, these convictions do not score due to their age. But what is apparent is that the defendant has not learned from these prior punishments or convictions. His abuse of alcohol has continued, even after he was released on bond conditions in this case. On August 9, 2022, the defendant told his probation officer that the reason he failed to respond the day prior was that he "had a fight"

10

with his girlfriend. On August 25, 2022, his officer spoke with the defendant's girlfriend, who reported about the incident which occurred at Amigo's restaurant in Pasadena, CA. She reported the defendant got drunk at the time and the two of them had gotten into an altercation when the defendant pushed her. Fortunately, other people in the restaurant broke up the altercation and law enforcement were therefore not contacted that night.

During his two-day interview with Dr. Tramontin, the expert for the government, the defendant minimized his alcohol abuse. He also explained his many different occupations throughout his adult life and attempted to justify his inability to succeed at any profession. In her final report (Gov't Trial Ex. 36), Dr. Tramontin concluded the following:

> "Over the course of his life, Mr. Durning has floundered professionally and personally and not achieved the landmarks that signal stability and maturity. His multiple career changes have not led to steady, gainful employment. He has shifted from relationship to relationship. He has lived with his parents on and off for many years and when married, was supported financially by his wife.
>
> Psychological testing suggests that he is an individual largely unable to admit shortcomings and weaknesses and that he possesses a pronounced sense of superiority. These combine and lead to interpersonal difficulties. Consistent with this, Mr. Durning presented during the interview with limited stamina for self-reflection and his contribution to outcomes. His preference is to move on and bury real or perceived failures. Further, he presents with a chronic history of problems stemming from his alcohol use. This spans 26 years and culminated in the instant offense for which he is under evaluation.
>
> Most noteworthy is the fact that despite evidence to the contrary, Mr. Durning remains firmly in denial of the impact his problematic drinking has had. As he does not admit to issues with alcohol, it is not possible to ascertain the extent that his chronic alcohol consumption and misuse is

11

tied to the other areas of his life in which he has not been fully successful.

What is known with a reasonable degree of psychological certainty, is that Mr. Durning's behavior on Flight 2954 is tied directly to his acute alcohol intoxication. Whether he ingested Ambien is unsubstantiated and his behavioral history raises doubts."

The defendant neither demonstrates any redeeming qualities, nor personal history, which would mitigate his extremely egregious criminal conduct.

C.  <u>The Need to Reflect the Seriousness of the Offense, Provide Just Punishment, and Promote Respect for the Law</u>

The Court's sentence must reflect the seriousness of the defendant's crimes and must also provide just punishment. 18 U.S.C. § 3553(a)(1)(A). A sentencing of 8-14 months does not reflect the type of sentence that this conduct requires. The seriousness of his crimes is outlined above and calls for an upward adjustment or variance.

The need to provide just punishment does too. So far, the defendant has received merciful treatment from the Courts for his alcohol-related crimes and his refusals to comply with the law are apparent. Instead of gratefulness to a criminal justice system that has treated him fairly, mercifully, and with respect, the defendant chose to continue his abuse of alcohol and has harmed many lives. As a result of his actions, not only has the child victim suffered long-lasting injuries, but the entire family has suffered and continues to suffer. Z.B.'s brother has never been the same since this assault. Her parents' marriage has been

affected. The relationship between every member of that family and their entire family dynamic has been negatively impacted because of the defendant's assault on Z.B. Leniency is not a suitable consideration any longer. The defendant is deserving of the maximum sentence.

### D. The Need for Specific Deterrence and to Protect the Public

The Court's sentence must "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1)(B) & 3553(a)(1)(C).

The Government submits that the maximum sentence of 5 years will ensure that the public is protected from the defendant for the longest period of time permissible, and so that the defendant appreciates the seriousness of his conduct. Perhaps a significant sentence will deter the defendant from engaging in this abusive conduct in the future, and increase the likelihood that he deals seriously with his addictions.

### V. Conclusion

Based upon the foregoing, the United States respectfully urges this Court to sentence Brian Patrick Durning to the statutory maximum term of five years imprisonment, followed by a term of supervised release of three years. We further request restitution in the amount of $59,260 for the victim's medical costs and tutoring.

13

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: */s/ Michael P. Felicetta*
Michael P. Felicetta
Assistant United States Attorney
Florida Bar No. 094468
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
E-mail: Michael.Felicetta@usdoj.gov

U.S. v. BRIAN PATRICK DURNING        Case No. 6:22-cr-102-WWB-DAB

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Jeremy Lasnetski, Esq.

                                 */s/ Michael P. Felicetta*
                                 Michael P. Felicetta
                                 Assistant United States Attorney
                                 Florida Bar No. 094468
                                 400 W. Washington Street, Suite 3100
                                 Orlando, Florida 32801
                                 Telephone: (407) 648-7500
                                 E-mail: Michael.Felicetta@usdoj.gov