JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Z.B., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DELTA AIR LINES, INC., *et al.*,<br><br>　　　　　Defendants. | Case No. 2:24-cv-06190-FLA (DFMx)<br><br>**ORDER GRANTING PLAINTIFFS'**<br>**MOTION TO REMAND [DKT. 14]** |

### RULING

Before the court is Plaintiffs Z.B., J.B., and S.S.'s (collectively, "Plaintiffs") Motion to Remand Action to State Court ("Motion"). Dkt. 14 ("Mot."). Defendants Delta Air Lines, Inc. ("Delta") and Brian Patrick Durning in *pro se* ("Durning") (collectively, "Defendants") oppose the Motion. Dkt. 23 ("Delta Opp'n"); Dkt. 41 ("Durning Opp'n"). On November 13, 2024, the court found this matter appropriate for resolution without oral argument and took the matter under submission. Dkt. 44; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court GRANTS the Motion and REMANDS the action to the Los Angeles County Superior Court.

/ / /

# **BACKGROUND**

Plaintiffs allege Durning harassed, threatened, and sexually assaulted and battered Z.B. during an overnight flight from Los Angeles, California, to Orlando, Florida, operated by Delta. Dkt. 1-1 at 12–13 ¶¶ 1–4, 17–18 ¶ 23.[1] Z.B. was 13 years old at the time of the flight, and was unable to cry out for help due to her selective mutism. *Id.* at 13 ¶ 3, 17 ¶ 24. According to Plaintiffs, a female passenger noticed the sexual assault and sought Delta's intervention, but Delta did not restrain Durning or move him to the back of the plane, and only moved him to an aisle seat two rows diagonally across from Plaintiffs from which he continued to harass Plaintiffs. *Id.* ¶ 5.

On January 30, 2024, Plaintiffs filed the Complaint in the Los Angeles County Superior Court, asserting five causes of action against Delta for: (1) intentional infliction of emotional distress; (2) gross negligence; (3) negligence; (4) negligent infliction of emotional distress; and (5) violation of California Business & Professions Code § 17200, *et seq.* (the California Unfair Competition Law); and four causes of action against Durning for: (1) assault; (2) sexual battery; (3) battery; and (4) intentional infliction of emotional distress. *Id.* at 20–32.

On March 18, 2024, Delta removed the action to this court, based on alleged diversity jurisdiction under 28 U.S.C. § 1332(a). Case No. 2:24-cv-02178-FLA (DFMx), Dkt. 1 ¶¶ 11–12. On April 15, 2024, the court remanded the action for lack of subject matter jurisdiction, finding Delta failed to establish by a preponderance of the evidence that the amount in controversy exceeded $75,000. *Id.*, Dkt. 37.

On July 24, 2024, Delta removed the action again in the subject action, based on alleged diversity jurisdiction under 28 U.S.C. § 1332(a). Dkt. 1. Plaintiffs now move to remand the action for lack of complete diversity.

///

---

[1] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

**DISCUSSION**

I.     **Legal Standard**

Federal courts are courts of "limited jurisdiction," possessing "only that power authorized by [the] Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); U.S. Const. art. III, § 2, cl. 1.  District courts are presumed to lack jurisdiction unless the contrary appears affirmatively from the record. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3 (2006).

Federal courts have diversity jurisdiction where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  As the removing party, Defendants bear the burden to justify this court's exercise of jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566.

"To demonstrate citizenship for diversity purposes a party must (a) be a citizen of the United States, and (b) be domiciled in a state of the United States." *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). "[A] person is 'domiciled' in a location where he or she has established a fixed habitation or abode in a particular place, and intends to remain there permanently or indefinitely." *Id.* at 749–50 (internal brackets and quotation marks omitted). "[C]ourts have held that the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of

1  taxes." *Id.* at 750. "[D]omicile is evaluated in terms of 'objective facts,' and …
2  statements of intent are entitled to little weight when in conflict with facts." *Id.*
3  (internal quotation marks omitted). "[T]he existence of domicile for purposes of
4  diversity is determined as of the time the lawsuit is filed, and "[t]he determination of a
5  party's domicile is a mixed question of law and fact." *Id.*

6      "A change in domicile requires the confluence of (a) physical presence at the
7  new location with (b) an intention to remain there indefinitely." *Id.* "[A] person's old
8  domicile is not lost until a new one is acquired," and "[c]ourts recognize "a
9  presumption in favor of an established domicile as against a newly acquired one." *Id.*
10 at 750–51. An inmate's forced relocation due to incarceration does not change his
11 domicile to the state of incarceration, as the inmate lacks freedom to choose his
12 residence and the forced nature of the relocation "does little to evince an intent to
13 make [the state of incarceration] his permanent home." *See Johnson v. Johnson*, 615
14 Fed. App'x 430, 431 (9th Cir. 2015).

15 **II.  Analysis**

16     Plaintiffs contend Defendants cannot establish complete diversity of citizenship
17 exists here because Plaintiffs and Durning are all domiciled in California. Mot. at 15.
18 It is undisputed Plaintiffs are domiciled in California. *See* Delta Opp'n at 5. Durning
19 was arrested and convicted by a jury for one count of assault resulting in substantial
20 bodily injury to a minor and two counts of assault in *United States v. Brian Patrick*
21 *Durning*, Case No. 6:22-cr-00102-WWB-RMN-1 (M.D. Fla.) (the "criminal action"),
22 Dkt. 115,[2] and is currently incarcerated in a federal correctional institution in New
23 Jersey. *See* Durning Opp'n at 1. For purposes of diversity jurisdiction, Durning's
24 domicile remains unchanged from the state in which he was domiciled prior to his
25 incarceration. *See Johnson*, 615 Fed. App'x at 431.

---

[2] The Eleventh Circuit affirmed Durning's conviction in an Order dated August 22, 2024. *Id.*, Dkt. 179. The Mandate issued on September 20, 2024. *Id.*, 184.

4

Plaintiffs present evidence Durning was domiciled in California prior to his incarceration including: (1) Durning presented a California driver's license at the time of his arrest on June 24, 2022, Dkt. 14-6 at 4, Dkt. 14-7 at 2–3; (2) on June 24, 2022, Durning's attorney represented to the court during his initial appearance hearing in the criminal action that his permanent address was 2044 El Molino Ave., Altadena, California (the "Altadena address"), and that he would return to the Altadena address if granted pretrial release, Dkt. 14-8 at 4 ("Because his stepfather [is] in California, that address is his permanent address."); (3) the court in the criminal action listed the Altadena address on the Order Setting Conditions of Release and prohibited Durning from changing his residence without advance approval from the U.S. Probation and Pretrial Services Office, Dkt. 14-9 at 3, and Durning acknowledged he understood these conditions, Dkt. 14-8 at 5–7; (4) on June 22, 2023, after Durning was convicted in the criminal action, Durning's attorney represented to the court that Durning was a resident of California and had been staying in Florida temporarily in preparation for trial, Dkt. 14-5 at 21–22; (5) Durning held a valid, unexpired California realtor license from 2021 through June 2, 2024, which listed the Altadena address, Dkts. 14-10, 14-15; (6) at his September 26, 2023 sentencing hearing in the criminal action, Durning spoke of his intent to return to Southern California after his incarceration and his personal and social ties to this area, Dkt. 14-13 at 5–8; (7) in August 2022, Durning listed the Altadena address when completing the Family Law Financial Affidavit in connection with the divorce action brought by his now ex-wife, Dkt. 14-12 at 13; (8) Durning's profile on LinkedIn states he has worked in various positions in California since 2015, Dkt. 14-11 at 2–3; and (9) Durning stated in an e-mail to Delta, dated July 22, 2024, that, "[b]ecause [he] was in fact domiciled in the State of California at the time of [his] trial and surrender into federal prison, [he] cannot make the claim that [he is] in fact a citizen of Florida," Dkt. 23-4 at 2.

Defendants respond Durning was domiciled in Florida when Plaintiffs filed the Complaint on January 30, 2024, because he has not been present in California

physically since prior to his criminal trial in June 2023, has no existing substantive ties to California, and does not intend to return to California following his release from prison. Delta Opp'n at 8. According to Defendants, Durning grew up and attended college in Florida, his parents live in Florida, his ex-wife and a close friend live in Florida, he used a Florida address when booking the June 23, 2022 flight that gave rise to this incident, and he provided police with the same Florida address at the time of the incident. *Id.* at 8–9 (citing Dkts. 23-3, 23-5 through 23-12); Durning Opp'n at 2. Defendants further note Durning requested to be incarcerated in a facility in Florida. Delta Opp'n at 10 (citing Dkt. 25 (Durning Ans.) ¶ 11); Durning Opp'n at 2–3. The court disagrees with Defendants.

The evidence in the record makes clear that Durning was a resident of California prior to his incarceration—as he stated repeatedly in court filings and proceedings, and his July 22, 2024 e-mail to Delta. *See* Dkt. 14-5 at 21–22; Dkt. 14-8 at 4; Dkt. 14-13 at 5–8; Dkt. 23-4 at 2. Durning's currently stated intent to relocate to Florida after his release from prison is insufficient to overcome the presumption that he changed his domicile from California to Florida—especially given his prior repeated statements to the contrary. *See Lew*, 797 F.2d at 750–51. Furthermore, even if the court were to assume *arguendo* that his stated intent to relocate to Florida is genuine, his intent would be insufficient to establish he is domiciled in that state currently, as he has not been located in Florida physically since his incarceration and, therefore, cannot change his domicile to that state. *See Lew*, 797 F.2d at 750.

The court, therefore, finds Durning was domiciled in California when Plaintiffs filed the Complaint, and that the court lacks subject matter jurisdiction over the action due to lack of complete diversity between Plaintiffs and Durning. *See Johnson*, 615 Fed. App'x at 431.

///

///

///

6

**CONCLUSION**

For the aforementioned reasons, the court GRANTS the Motion and REMANDS the action to the Los Angeles County Superior Court. Having granted the Motion for the reasons stated, the court need not address the parties' remaining arguments.

IT IS SO ORDERED.

Dated: February 18, 2025

                                            FERNANDO L. AENLLE-ROCHA
                                            United States District Judge